**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| MICHAEL KENT, Individually and On Behalf of All Others Similarly Situated, | ) | |
| Plaintiff, | ) | Case No. ______________ |
| v. | ) | JURY TRIAL DEMANDED |
| CHESAPEAKE LODGING TRUST, JAMES L. FRANCIS, DOUGLAS W. VICARI, THOMAS A. NATELLI, THOMAS D. ECKERT, JOHN W. HILL, ANGELIQUE G. BRUNNER, JEFFERY D. NUECHTERLEIN, PARK HOTELS & RESORTS INC., PK DOMESTIC PROPERTY LLC, and PK DOMESTIC SUB LLC, | ) | CLASS ACTION |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on May 6, 2019 (the "Proposed Transaction"), pursuant to which Chesapeake Lodging Trust ("Chesapeake" or the "Company") will be acquired by Park Hotel & Resorts Inc. ("Park"), a Delaware corporation, PK Domestic Property LLC ("Parent"), a Delaware limited liability company, and PK Domestic Sub LLC, a Delaware limited liability company ("Merger Sub," and together with Park and Parent, the "Park Parties").

2. On May 5, 2019, Chesapeake's Board of Trustees (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with the Park Parties. Pursuant to the terms of the Merger Agreement, Chesapeake stockholders will receive $11.00 in cash and 0.628 shares of Park common stock for each share of Chesapeake common stock they own.

3. On June 14, 2019, defendants filed a registration statement (the "Registration Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4. The Registration Statement omits material information with respect to the Proposed Transaction, which renders the Registration Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Registration Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Chesapeake common stock.

9. Defendant Chesapeake is a Maryland corporation and a party to the Merger Agreement. Chesapeake's common stock is traded on the NYSE under the ticker symbol "CHSP."

10. Defendant James L. Francis is Chief Executive Officer, President, and a member of the Board.

11. Defendant Douglas W. Vicari Executive Vice President, Chief Financial Officer, and a member of the Board.

12. Defendant Thomas A. Natelli is non-executive Chairman of the Board of the Company.

13. Defendant Thomas D. Eckert is a member of the Board.

14. Defendant John W. Hill is a member of the Board.

15. Defendant Angelique G. Brunner is a member of the Board.

16. Defendant Jeffrey D. Nuechterlein is a member of the Board.

17. The defendants identified in paragraphs 10 through 16 are collectively referred to herein as the "Individual Defendants."

18. Defendant Park is a Delaware corporation and a party to the Merger Agreement.

19. Defendant Parent is a Delaware limited liability company, an indirect subsidiary of Park, and a party to the Merger Agreement.

20. Defendant Merger Sub is a Delaware limited liability company, a direct subsidiary of Parent, and a party to the Merger Agreement.

## CLASS ACTION ALLEGATIONS

21. Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Chesapeake (the "Class"). Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22. This action is properly maintainable as a class action.

23. The Class is so numerous that joinder of all members is impracticable. As of May 3, 2019, there were approximately 60,765,796 shares of Chesapeake common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout the country.

24. Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25. Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature. Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class. Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26. The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27. Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class. Therefore, final injunctive relief on

behalf of the Class is appropriate.

## **SUBSTANTIVE ALLEGATIONS**

***Background of the Company and the Proposed Transaction***

28. Chesapeake is a self-advised lodging real estate investment trust focused on investments primarily in upper-upscale hotels in major business and convention markets and, on a selective basis, premium select-service hotels in urban settings or unique locations in the United States.

29. The Company owns twenty hotels with an aggregate of 6,288 rooms in eight states and the District of Columbia.

30. On May 5, 2019, Chesapeake's Board caused the Company to enter into the Merger Agreement with the Park Parties.

31. Pursuant to the terms of the Merger Agreement, Chesapeake stockholders will receive $11.00 in cash and 0.628 shares of Park common stock for each share of Chesapeake common stock they own.

32. According to the press release announcing the Proposed Transaction:

> Park Hotels & Resorts Inc. ("Park", the "Company") (NYSE: PK) and Chesapeake Lodging Trust ("Chesapeake") (NYSE: CHSP) today announced that they have entered into a definitive merger agreement under which Park will acquire all the outstanding shares of Chesapeake in a cash and stock transaction valued at approximately $2.7 billion (inclusive of transaction costs). Upon completion of the merger, the combined company will have an estimated enterprise value of $12 billion, firmly solidifying Park's position as the second largest lodging REIT while also advancing the Company's strategic goals of portfolio enhancement and diversification. The transaction has been approved by the board of directors and board of trustees of Park and Chesapeake, respectively.
>
> Under the terms of the merger agreement, Chesapeake shareholders will receive $11.00 in cash and 0.628 of a share of Park common stock for each Chesapeake share. The fixed exchange ratio represents an agreed upon price of $31.00 per share of Chesapeake shares of beneficial interest based on Park's trailing 10-day volume weighted average price ("VWAP") as of May 3, 2019. Based on Park's closing

> stock price on May 3, 2019, this represents $31.71 per share of aggregate value to Chesapeake shareholders and represents a premium of approximately 11% to Chesapeake's trailing 10-dayVWAP and approximately 8% to Chesapeake's closing stock price on May 3, 2019. Upon closing, Park stockholders and Chesapeake shareholders will own approximately 84% and 16% of the combined Company, respectively. The transaction is subject to customary closing conditions, including receipt of the approval of Chesapeake shareholders. The companies currently expect the transaction to close in late third quarter or early fourth quarter of 2019. . . .
>
> Leadership and Organization
>
> Each of the Board of Directors of Park and Board of Trustees of Chesapeake has approved the merger. Park's Board of Directors will be increased to ten members upon closing, with two additions from Chesapeake's Board of Trustees. Thomas J. Baltimore, Jr., Park's Chairman and CEO, will continue to serve as Chairman of Park's Board of Directors, and Mr. Baltimore will also continue to lead the combined company, along with Park's existing senior management team. . . .
>
> Advisors
>
> BofA Merrill Lynch and Barclays are acting as financial advisors and Hogan Lovells is acting as legal counsel to Park. J.P. Morgan Securities LLC is acting as exclusive financial advisor and Paul, Weiss, Rifkind, Wharton & Garrison LLP and Polsinelli PC are acting as legal counsel to Chesapeake.

***The Registration Statement Omits Material Information***

33. Defendants filed the Registration Statement with the SEC in connection with the Proposed Transaction.

34. As set forth below, the Registration Statement omits material information with respect to the Proposed Transaction.

35. First, the Registration Statement omits material information regarding the Company's and Park's financial projections.

36. With respect to the Company's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) Adjusted Corporate EBITDA *re*, (b) Adjusted FFO available to common shareholders, and (c) unlevered free cash flow; and (ii) a

reconciliation of all non-GAAP to GAAP metrics.

37. With respect to Park's financial projections, the Registration Statement fails to disclose: (i) all line items used to calculate (a) EBITDA *re*, (b) FFO available to common stockholders, and (c) unlevered free cash flow; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

38. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

39. Second, the Registration Statement omits material information regarding the analyses performed by the Company's financial advisor in connection with the Proposed Transaction, J.P. Morgan Securities LLC ("JPM").

40. With respect to JPM's Public Trading Multiples Analysis, the Registration Statement fails to disclose the individual multiples and metrics for the companies observed by JPM in the analysis.

41. With respect to JPM's Discounted Cash Flow Analysis of Chesapeake, the Registration Statement fails to disclose: (i) all line items used to calculate the future standalone unlevered free cash flows that Chesapeake was forecasted to generate from calendar year 2019 through calendar year 2023; (ii) the range of terminal values for Chesapeake; (iii) JPM's basis for applying a terminal growth rate ranging from 1.50% to 2.50%; (iv) the individual inputs and assumptions underlying the range of discount rates from 7.25% to 8.25%; and (v) Chesapeake's net debt.

42. With respect to JPM's Discounted Cash Flow Analysis of Park, the Registration Statement fails to disclose: (i) all line items used to calculate the future standalone unlevered free cash flows that Park was forecasted to generate from calendar year 2019 through calendar year 2023; (ii) the range of terminal values for Park; (iii) JPM's basis for applying a terminal growth rate ranging from 1.50% to 2.50%; (iv) the individual inputs and assumptions underlying the range of discount rates from 7.00% to 8.00%; and (v) Park's net debt.

43. With respect to JPM's analysis of analyst share price targets for Chesapeake and Park, the Registration Statement fails to disclose: (i) the individual price targets for Chesapeake and Park; and (ii) the sources thereof.

44. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

45. Third, the Registration Statement fails to disclose whether the Company entered into any confidentiality agreements that contained standstill and/or "don't ask, don't waive" provisions that are or were preventing the counterparties from submitting superior offers to acquire the Company.

46. Without this information, stockholders may have the mistaken belief that, if these potentially interested parties wished to come forward with a superior offer, they are or were permitted to do so, when in fact they are or were contractually prohibited from doing so.

47. Fourth, the Registration Statement fails to disclose the terms and values of all indications of interest and offers provided to the Company during the process leading up to the execution of the Merger Agreement, including the "separate proposals that had been made following J.P. Morgan's targeted outreach efforts by three publicly traded lodging REITs to

acquire Chesapeake for stock or a mixture of stock and cash."

48. The Company's stockholders are entitled to an accurate description of the process leading up to the Proposed Transaction.

49. The omission of the above-referenced material information renders the Registration Statement false and misleading, including, *inter alia*, the following sections of the Registration Statement: (i) Background of the Merger; (ii) Recommendation of the Chesapeake Board and Its Reasons for the Merger; (iii) Opinion of Chesapeake's Financial Advisor; and (iv) Certain Chesapeake Unaudited Prospective Financial Information.

50. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

**COUNT I**

**Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Chesapeake**

51. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

52. The Individual Defendants disseminated the false and misleading Registration Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Chesapeake is liable as the issuer of these statements.

53. The Registration Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Registration Statement.

54. The Individual Defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

55. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Registration Statement and in other information reasonably available to stockholders.

56. The Registration Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

57. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

58. Because of the false and misleading statements in the Registration Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

**Claim for Violation of Section 20(a) of the 1934 Act**
**Against the Individual Defendants and the Park Parties**

59. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

60. The Individual Defendants and the Park Parties acted as controlling persons of Chesapeake within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or Board members of Chesapeake and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and

misleading.

61. Each of the Individual Defendants and the Park Parties was provided with or had unlimited access to copies of the Registration Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

62. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Registration Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Registration Statement.

63. The Park Parties also had supervisory control over the composition of the Registration Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Registration Statement.

64. By virtue of the foregoing, the Individual Defendants and the Park Parties violated Section 20(a) of the 1934 Act.

65. As set forth above, the Individual Defendants and the Park Parties had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 25, 2019

**RIGRODSKY & LONG, P.A.**

By: */s/ Gina M. Serra*

Brian D. Long (#4347)
Gina M. Serra (#5387)
300 Delaware Avenue, Suite 1220
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
Email: bdl@rl-legal.com
Email: gms@rl-legal.com

*Attorneys for Plaintiff*

**OF COUNSEL:**

**RM LAW, P.C.**
Richard A. Maniskas
1055 Westlakes Drive, Suite 300
Berwyn, PA 19312
Telephone: (484) 324-6800
Facsimile: (484) 631-1305
Email: rm@maniskas.com